Dennis A. PALMA, Plaintiff,

v.

ATLANTIC COUNTY, et
al., Defendants.

Civ. A. No. 98–1971.

United States District Court,
D. New Jersey.

June 15, 1999.

Thomas J. Gosse, Haddon Heights, NJ, for Plaintiff, Dennis A. Palma.

Paul J. Gallagher, County Counsel, Diane M. Ruberton, Assistant County Counsel, Atlantic City, NJ, for Defendants, Atlantic County, Atlantic County Sheriff's Department, James McGettigan, Jane Bentley, Roy C. Trotta, Jean Santora, and Raymond C. Coleman.

## OPINION

ORLOFSKY, District Judge:

This civil rights suit alleging claims for the violation of Plaintiff's First, Fourth, Eighth and Fourteenth Amendment rights requires the Court to address several difficult issues of law which are unresolved in this District. First, I must determine the appropriate legal standard to be applied to a claim for post-conviction malicious prosecution in the wake of the Third Circuit's decision in *Torres v. McLaughlin*, 163 F.3d 169 (3d Cir.1998). Second, in considering the allegedly perjured grand jury testimony of a police officer testifying as a complaining witness, I must reconcile the Third Circuit's holding in *Williams v. Hepting*, 844 F.2d 138 (3d Cir.1988), extending absolute witness immunity to pretrial hearings, with the United States Supreme Court's decision in *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), holding that police officers acting as complaining witnesses are only entitled to qualified, and not absolute, immunity. Third, in determining whether Defendants are entitled to qualified immunity on Plaintiff's First Amendment claim for retaliatory prosecution, I must apply the objective reasonableness standard of the defense of qualified immunity to the wholly subjective element of Defendants' retaliatory motive as required by the Third Circuit in *Larsen v. Senate of the Commonwealth of Pennsylvania*, 154 F.3d 82 (3d Cir.1998).

On August 3, 1998, Plaintiff, Dennis A. Palma ("Palma"), filed an Amended Complaint alleging claims under 42 U.S.C. § 1983 for violations of his First, Fourth, Eighth and Fourteenth Amendment rights, as well as a litany of state common law causes of action. Palma's claims arise out of his arrest, detention and prosecution for referring to himself as the "Unabomber" while entering the Atlantic County Courthouse, located in Atlantic City, New Jersey. Defendants have moved to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting numerous defenses to Palma's federal claims, including the existence of probable cause, respondeat superior liability, failure to establish municipal liability, absolute immunity and qualified immunity. The

Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 1331 and 1343.[1]

For the reasons set forth below, first, I conclude that, to state a claim for post-conviction malicious prosecution, a Plaintiff must allege: (a) the initiation of a criminal proceeding; (b) a seizure within the meaning of the Fourth Amendment; (c) lack of probable cause; and (d) termination of the criminal proceeding in the plaintiff's favor. Second, I conclude that the Third Circuit's extension of absolute witness immunity applies to adversarial pretrial hearings only, and not to grand jury proceedings. Thus, under *Malley*, a police officer testifying as a complaining witness before a grand jury is entitled only to qualified, and not absolute immunity from civil liability for his or her allegedly perjured grand jury testimony. Third, given that the Third Circuit has recognized that applying the objective reasonableness standard of the qualified immunity defense to the subjective motivation element of a claim for retaliation "cannot properly be resolved on the face of the pleadings," *Larsen*, 154 F.3d at 94, I shall deny Defendants' motion without prejudice and permit the parties to conduct discovery limited to the issue of Defendants' "true motive[,]" *Id.*, as well as the related issue of whether Defendants could have reasonably, but mistakenly believed that probable cause existed to arrest, detain and prosecute Palma.

Accordingly, I shall grant in part and deny in part Defendants' motion to dismiss. Specifically, I shall dismiss Palma's Eighth Amendment claim for cruel and unusual punishment because he has failed to allege a cognizable violation of the Eighth Amendment. I shall, however, deny Defendants' motion to dismiss Pal-ma's Fourth Amendment claims because he has sufficiently alleged the existence of grand jury irregularity in the filing of the indictment in his criminal prosecution.

In addition, I shall deny Defendants' motion to dismiss the Amended Complaint on the basis of respondeat superior liability and failure to establish municipal liability because Palma has sufficiently alleged the personal involvement and knowing acquiescence of the defendant supervisory officials, and has alleged the existence of a "policy" of the County and Sheriff's Department responsible for the deprivation of his constitutional rights. Furthermore, I shall grant Defendants' motion to dismiss the Amended Complaint against Defendant, Bentley, to the extent that Palma seeks to hold her liable for her allegedly perjured trial testimony because she is absolutely immune from civil liability. With regard to her allegedly perjured grand jury testimony, however, I shall deny Defendants' motion because I conclude that police officers testifying as complaining witnesses before a grand jury are only entitled to qualified, and not absolute immunity.

Finally, I shall deny without prejudice Defendants' motion to dismiss the Amended Complaint against the defendant Sheriff Officers on the basis of qualified immunity, and permit Defendants to renew their motion after a period of discovery limited to the issues of the defendant Sheriff Officers' true motive in arresting, detaining and prosecuting Palma, and whether these defendants could have reasonably believed that probable cause existed for their actions.

---

1. Section 1331 provides:
 The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
 *See* 28 U.S.C. § 1331. Section 1343 provides, in relevant part:
 The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person ... [t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights. ...
 *See* 28 U.S.C. § 1343(a)(4). Because Defendants have failed to address Plaintiff's state common law claims in their motion to dismiss, I need not decide at this time whether to exercise supplemental jurisdiction over these claims. *See* Section III.D *infra*.

## I. BACKGROUND

On August 3, 1998, Palma filed a civil rights complaint pursuant to 42 U.S.C. § 1983[2] against Defendants, Atlantic County; the Atlantic County Sheriff's Department ("Sheriff's Department"); James McGettigan, the Atlantic County Sheriff ("McGettigan"); Sheriff's Officer Jane Bentley ("Bentley"), Sheriff's Officer Roy C. Trotta ("Trotta"), Sheriff's Sergeant Jean Santora ("Santora"), Sheriff's Lieutenant Raymond C. Coleman ("Coleman," collectively "Defendants"), and John Does 1–10, officers and supervisors of the Atlantic County Sheriff's Department. *See* Amended Complaint (filed Aug. 3, 1998). In the Amended Complaint, Palma alleges that Defendants "deprived [him] of rights secured ... by the Constitution of the United States, including ... his First Amendment right to freedom of expression, his Fourth Amendment right to be free from unlawful search and seizure of his person and property, his Fifth and Fourteenth Amendment rights to due process of law, ... [and] his Eighth Amendment right to be free from cruel [and] unusual punishment...." *See* Amended Compl., ¶ 34. In addition, Palma alleges the following state law causes of action against Defendants: "perjury, false arrest and imprisonment, assault and battery, malicious prosecution, abuse of process, prima facia [sic] tort, conspiracy tort, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, gross negligence, and outrageous conduct under the laws of the State of New Jersey." *See id.*, ¶ 39. Palma also seeks attorneys' fees under 42 U.S.C. § 1988.[3] *See id.*, ¶ 34.

The events giving rise to this case took place on April 26, 1996, at the Atlantic County Courthouse. *See* Amended Compl., ¶ 13. On that date, Palma entered the Atlantic County Courthouse "to prosecute *pro se*, a Special Civil Part Complaint." *Id.* "As part of the proofs in his Special Civil Part case, [Palma] brought to the courthouse a water filtration system which he had placed in a cardboard box." *Id.*

To enter the courthouse, Palma had to proceed through a security check point. *See id.*, ¶ 14. "As [Palma] entered the initial checkpoint in the foyer of the courthouse, [Sheriff's Officer] Bentley asked [Palma] what he had in [the cardboard] box." *Id.* Palma "voluntarily handed the box to ... Bentley ... and said to her in a joking manner, 'What do I look like, the Unabomber. [sic]'" *Id.*, ¶ 15 (additional quotations omitted). Bentley "inspected the contents of the ... [cardboard] box, told [Palma] he should not be talking like that around the courthouse, handed the box back to [him], [and] gave [him] directions to the courtroom ... where his Special Civil Part action was scheduled to begin...." *Id.*, ¶ 16.

Palma entered the courtroom and remained there "awaiting ... his trial for approximately 45 minutes when [Sheriff's Officer] Trotta entered the courtroom and told [Palma] he wanted to speak to him outside." *See* Amended Compl., ¶ 17. Outside the courtroom, Trotta and Sheriff's Officer Santora "seized [Palma] and

2. Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*See* 42 U.S.C. § 1983.

3. Section 1988 provides, in relevant part:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs....

*See* 42 U.S.C. § 1988(b).

escorted him to the Sheriff's Office." *Id.,* ¶ 18.

"At the Sheriff's office, [ ] Bentley arrested [Palma]...." *Id.,* ¶ 19. Palma alleges that Defendants, Bentley, Trotta, Santora, and Coleman, "searched [Palma], fingerprinted him, photographed him, detained him, and seized the [cardboard box] he had brought to the courthouse to present in his Special Civil Part case." *Id.*

Subsequently, Bentley "signed [criminal] complaints against [Palma] charging him with two indictable offenses, a third degree Terroristic Threat in violation of [N.J. Stat. Ann. § ] 2C:12–3a[,] and one count of Creating a False Public Alarm, a third degree offense, in violation of [N.J. Stat. Ann. § ] 2C:33–3."[4] *See* Amended Compl., ¶ 20. "After indictment but before trial, the Atlantic County Prosecutor's Office downgraded the crimes to Petty Disorderly Persons Offenses[,] charging [Palma] with Harassment, in violation of [N.J. Stat. Ann. § ] 2C:33–4(a) and (c), [and] Disorderly Conduct, in violation of [N.J. Stat. Ann. § ] 2C:33–2A(1)."[5] *Id.,* ¶ 21.

4. Section 2C:12–3(a) provides:

A person is guilty of a crime of the third degree if he threatens to commit any crime of violence with purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience.

*See* N.J. Stat. Ann. § 2C:12–3(a). Section 2C:33–3 provides, in relevant part:

[A] person is guilty of a crime ... if he initiates or circulates a report or warning of an impending fire, explosion, bombing, crime, catastrophe or emergency knowing that the report or warning is false or baseless and that it is likely to cause evacuation of a building, place of assembly, or facility of public transport, or to cause public inconveniences or alarm ... A person is guilty of a crime of the third degree if in addition to the report or warning initiated, circulated or transmitted under subsection a., he places or causes to be placed any false or facsimile bomb in a building, place of assembly, or facility of public transport

On April 8, 1997, Palma was tried on the downgraded offenses before the Honorable Robert J. Neustadter, J.S.C. *See* Amended Compl., ¶ 22. "After testimony of the witnesses and all other evidence was submitted to the court, Assistant [County] Prosecutor Dana Litke requested that the court find the plaintiff guilty of a Petty Disorderly [Conduct] Offense for which he was not charged[, namely, N.J. Stat. Ann. § ] 2C:33–2(a)(2)." *Id.,* ¶ 23; *see* note 5 *supra.* Judge Neustadter dismissed the original charges and "followed Litke's recommendation and found [Palma] guilty[,]" *Id.,* ¶ 24, of "[c]reat[ing] a hazardous or physically dangerous condition by any act which serves no legitimate purpose...." *See* N.J. Stat. Ann. § 2C:33–2(a)(2). Consequently, Palma was "sentenced to pay a fine of $200, a Violent Crimes Compensation Board penalty of $50, [a] Safe Neighborhood fee of $75, and was told to perform 10 hours of community service." *See id.,* ¶ 25.

On May 19, 1997, Palma appealed to the New Jersey Superior Court, Appellate Division. *See* Amended Compl., ¶ 26. Palma alleges that:

or in a place likely to cause public inconvenience or alarm.

*See* N.J. Stat. Ann. § 2C:33–3(a–b).

5. Section 2C:33–4 provides, in relevant part:

[A] person commits a petty disorderly persons offense if, with purpose to harass another, he[ ] ... [m]akes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm[, or] [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

*See* N.J. Stat. Ann. § 2C:33–4(a, c). Section 2C:33–2A provides, in relevant part:

A person is guilty of a petty disorderly persons offense, if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he (1) Engages in fighting or threatening, or in violent or tumultuous behavior; or (2) Creates a hazardous or physically dangerous condition by any act which serves no legitimate purpose of the actor.....

*See* N.J. Stat. Ann. § 2C:33–2(a).

On ... February 27, 1998, the Appellate Division reversed his conviction finding that there was a total lack of proof to sustain the conviction and that in the alternative [it] was error to find [Palma] guilty of an offense for which he had never been charged. The Appellate Division held that the charge and conviction were without foundation.

*See id.,* ¶ 27 (internal quotations omitted).

In the Amended Complaint, Palma further alleges that:

The detention, arrest, search, fingerprinting, photographing, seizure of his personal belongings, swearing out of a complaint, indicting [Palma], and otherwise charging [him] with offenses[,] ... and forcing [him] to undergo a trial and an appeal, were all done without probable cause, legal justification and/or were unlawful, and were violative of plaintiff's Constitutional ... rights and privileges ... [The] unlawful and unwarranted treatment to which [Palma] was subjected was consistent with the institutionalized practice of the Atlantic County Sheriff's Department, which was known to and ratified by ... Atlantic County, the ... Sheriff's Department, and ... McGettigan[,] ... having at no time taken any effective action to prevent personnel from the Sheriff's Office from continuing to engage in [the above described] conduct.... Atlantic County, the ... Sheriff's Department, and ... McGettigan and/or ... authorized, tolerated as institutionalized practices, and ratified the misconduct [of the defendant Sheriff Officers] ... by: [failing to discipline the defendant Sheriff Officers; failing to take adequate precautions in hiring the defendant Sheriff Officers; failing to establish a functioning and meaningful departmental system for dealing with complaints of abuse of conduct]....

*See* Amended Compl., ¶¶ 28–31.

On September 9, 1998, Defendants filed a motion to dismiss the Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Notice of Motion (filed Sept. 9, 1998). Defendants contend that Palma's Amended Complaint fails to state a claim because: (1) Palma has failed to allege the personal involvement or acquiescence of McGettigan and Coleman; (2) Palma "has failed to point out a specific policy which is violative of his constitutional rights[;]" (3) the return of an indictment against Palma establishes that Defendants acted with probable cause; (4) insofar as Palma seeks relief based on Bentley's testimony before the grand jury and the trial court, Bentley is entitled to absolute immunity; and (5) the defendant Sheriff Officers are entitled to qualified immunity. *See* Defendants' Brief in Support of Motion to Dismiss (filed Sept. 9, 1998) at 4–9 ("Def.Brief"). Palma opposes the motion. *See* Plaintiff's Brief in Opposition to Motion to Dismiss (filed Oct. 6, 1998) ("Pl.Brief").

## II. LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

"In considering a motion to dismiss under Rule 12(b)(6), the court may dismiss a complaint if it appears certain that the plaintiff cannot prove any set of facts in support of [his] claims which would entitle [him] to relief." *Mruz v. Caring, Inc.,* 39 F.Supp.2d 495, at 499 (D.N.J.1999) (Orlofsky, J.) (citing *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988)). "While all well-pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor, the Court may dismiss a complaint where, under any set of facts which could be shown to be consistent with a complaint, the plaintiff is not entitled to relief." *Id.* (citing *Gomez v. Toledo,* 446 U.S. 635, 636, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990)); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80

(1957). In addition, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (noting that this procedure "streamlines litigation by dispensing with needless discovery and factfinding").

Rule 12(b) of the Federal Rules of Civil Procedure provides that, upon the filing of a motion for failure to state a claim upon which relief can be granted, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b). The parties must be given adequate notice that the motion to dismiss will be considered under Rule 56. *See Rose v. Bartle,* 871 F.2d 331, 342 (3d Cir.1989); *see also* Fed.R.Civ.P. 12(b) ("[A]ll parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

Although both parties have submitted exhibits in support of and in opposition to Defendants' motion to dismiss, I shall not consider these exhibits in resolving Defendants' motion to dismiss because the parties have not been notified that the motion will be considered under Rule 56, and the parties have not been afforded a reasonable opportunity to present all pertinent material. *See* Fed. R. Civ. P. 12(b); *Rose,* 871 F.2d at 342; *see also* Section III.C.4.a-b.

## III. DISCUSSION

### A. *Palma's Federal Claims*

Count one of the Amended Complaint alleges six federal causes of action, including: (1) a cause of action for retaliatory prosecution for exercise of the First Amendment right of freedom of expres-sion; (2) unlawful arrest in violation of the Fourth Amendment; (3) false imprisonment in violation of the Fourth and Fourteenth Amendments; (4) pre-conviction malicious prosecution in violation of the Fourth Amendment; (5) a claim for post-conviction malicious prosecution in violation of the Fourteenth Amendment; [6] and (6) a cause of action for cruel and unusual punishment in violation of the Eighth Amendment. *See* Amended Compl., Count One. Defendants do not specifically address Palma's claims. *See* Def. Brief. Rather, Defendants assert a number of defenses which they contend preclude Palma from stating any federal claim upon which relief can be granted. *See id.* Before I can determine whether Defendants have asserted meritorious defenses, insulating them from liability, I must first consider whether Palma has sufficiently pled his § 1983 causes of action for the deprivation of his First, Fourth, Eighth and Fourteenth Amendment rights.

### 1. *Retaliatory Prosecution*

"[I]nstitution of [a] criminal action to penalize [or in retaliation for] the exercise of one's First Amendment rights is a deprivation cognizable under § 1983." *Losch v. Borough of Parkesburg,* 736 F.2d 903, 907–08 (3d Cir.1984) (citing *Wilson v. Thompson,* 593 F.2d 1375, 1377 (5th Cir. 1979)); *see also Johnson v. City of Chester,* 10 F.Supp.2d 482, 489 (E.D.Pa.1998) (collecting cases). "Governmental 'action designed to retaliate against and chill political expression strikes at the heart of the First Amendment.'" *Mendocino Environmental Center v. Mendocino County,* 14 F.3d 457, 464 (9th Cir.1994) (quoting *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987); *see also Larsen v. Senate of the Common-*

---

6. In *Torres v. McLaughlin,* 163 F.3d 169 (3d Cir.1998), the Third Circuit distinguished between § 1983 claims for pre-conviction malicious prosecution under the Fourth Amendment and post-conviction malicious prosecution under the Due Process Clause of the Fourteenth Amendment. *Id.* at 174. This distinction is explained in detail in *Luthe v. City of Cape May,* 49 F.Supp.2d 380, 392 (D.N.J.1999), and developed further in the text in Section III.A.4 *infra.*

*wealth of Pennsylvania,* 154 F.3d 82, 93–94 (3d Cir.1998). "A plaintiff 'may not recover merely on the basis of a speculative "chill" due to generalized and legitimate law enforcement initiatives[; h]owever, where a plaintiff alleges discrete acts of police ... intimidation directed solely at silencing' [protected speech], a civil rights claim will lie." *Mendocino Envtl. Ctr.,* 14 F.3d at 464 (internal citations and alterations omitted).

■ To state a claim for retaliatory prosecution, a plaintiff "must allege that (i) he has an interest protected by the First Amendment; (ii) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (iii) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights." *Connell v. Signoracci,* 153 F.3d 74, 79 (2d Cir.1998) (citations omitted); *cf. City of Chester,* 10 F.Supp.2d at 489 (citing *Moore v. Valder,* 65 F.3d 189, 195–96 (distinguishing between retaliatory and malicious prosecution)); *cf. Larsen,* 154 F.3d at 94 (citing *Feldman v. Philadelphia Hous. Auth.,* 43 F.3d 823, 829 (3d Cir.1994), for the proposition that, to state a claim, a plaintiff must allege that the First Amendment activity was a "substantial motivating factor in the alleged retaliatory action").

■ First, Palma alleges that, as he handed Bentley the cardboard box, he "said to [her] ... in a joking manner, 'What do I look like, the Unabomber. [sic]' " *See* Amended Compl., ¶ 15. Second, Palma alleges that Defendants initiated a criminal prosecution against him without probable cause because of his "Unabomber" comment and for the purpose of preventing him from making similar such "jokes" in the future. *See id.,* ¶ 16 (alleging that Bentley "told [Palma] he should not be talking like that around the courthouse"), 18–31.

Finally, in *Losch,* the Third Circuit observed that criminal prosecution because of speech by definition has a "chilling" effect. *Losch,* 736 F.2d at 912 (stating "[t]he Supreme Court has clearly held that prosecution of a citizen for 'nonprovocatively voicing his objection'. to police conduct impermissibly punishes constitutionally protected speech") (quoting *Norwell v. City of Cincinnati,* 414 U.S. 14, 16, 94 S.Ct. 187, 38 L.Ed.2d 170 (1973)). Thus, in this case, it is apparent that the arrest and prosecution of Palma "chilled" his protected speech.

Therefore, while Palma's "joke" regarding the security measures employed by the Atlantic County Courthouse may have been in poor taste, given that it came close on the heels of the arrest of the actual "Unabomber" in April, 1996, and not long after the bombing of the federal courthouse in Oklahoma City in April, 1995, his comment, as alleged, cannot reasonably be construed as "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *City of Houston v. Hill,* 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (quoting *Terminiello v. Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949)); *cf. United States v. Kosma,* 951 F.2d 549, 553 (3d Cir.1991) (discussing the difference between a true threat which the Government may proscribe and a statement protected by the First Amendment); *see also R.A.V. v. City of St. Paul,* 505 U.S. 377, 383–84, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (discussing the scope of protected and unprotected expression, and the narrowness of the categories of unprotected expression). Clearly, Defendant, Bentley, did not take seriously Palma's comment that he was the "Unabomber." If she had, Bentley certainly would not have "handed the box back to [Palma], [giving him] directions to courtroom 1C...." *See* Amended Compl., ¶ 16. Accordingly, taking all of the facts alleged in the Amended Complaint to be true, as I am required to do in resolving Defendants' motion to dismiss, *Ransom,* 848 F.2d at 401, I conclude that Palma has sufficiently asserted a vio-

lation of his First Amendment right of freedom of expression.

### 2. Cruel and Unusual Punishment

In the Amended Complaint, Palma alleges that Defendants' actions deprived him of "his Eighth Amendment right to be free from cruel or unusual punishment[.]" Amended Compl., ¶ 34. Palma, however, does not allege what the cruel and unusual punishment was. Presumably, Palma contends that any punishment imposed by a trial court after conviction is cruel and unusual, if the underlying conviction is later invalidated on appeal. Such a contention demonstrates a complete misunderstanding of the Supreme Court's Eighth Amendment jurisprudence.

In *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), the United States Supreme Court discussed the protections afforded by the Eighth Amendment as follows:

> The language of the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," manifests "an intention to limit the power of those entrusted with the criminal-law function of government." *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). The Cruel and Unusual Punishments Clause "was designed to protect those convicted of crimes," *id.*, and consequently the Clause applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Id.* at 671, n. 40[, 97 S.Ct. 1401]; *see also Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605(1983); *Bell v. Wolfish*, 441 U.S. 520, 535, n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).... Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however. "After incarceration, only the ' "unnecessary and wanton infliction of pain" ' ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Wright*, 430 U.S. at 670[, 97 S.Ct. 1401] (quoting *Estelle v. Gamble*, 429 U.S. 97, 103[, 97 S.Ct. 285, 50 L.Ed.2d 251] (1976) (citations omitted)). To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.

*Whitley*, 475 U.S. at 318–19, 106 S.Ct. 1078.

Thus, to the extent that Palma seeks to allege a § 1983 claim arising out of Defendants' actions prior to his conviction, Palma fails to state a cognizable claim under the Eighth Amendment. *Id.; see also Rodriguez v. City of Passaic*, 730 F.Supp. 1314, 1319 (D.N.J.1990) (Barry, J.) (quoting *City of Revere*, 463 U.S. at 244, 103 S.Ct. 2979, for the proposition that "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt ..."); *accord Ingraham*, 430 U.S. at 671–72, 97 S.Ct. 1401.

In addition, to the extent that Palma seeks to assert an Eighth Amendment claim arising out of his sentence on the conviction for a disorderly persons offense, he fails to state a claim. After his conviction, Palma "was sentenced to pay a fine of $200, a Violent Crimes Compensation Board penalty of $50, Safe Neighborhood fee of $75, and was told to perform 10 hours of community service." *See* Amended Compl., ¶ 25. This light, noncustodial sentence cannot reasonably be construed as the "unnecessary and wanton infliction of pain constitut[ing] cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley*, 475 U.S. at 318–19, 106 S.Ct. 1078 (internal quotations, alterations, and citations omitted). The Eighth Amendment does not provide a cause of action for every criminal defendant whose conviction and sentence has been invalidated on appeal. Rather, the

Eighth Amendment serves to protect prisoners, entrusted to the custody of the State, from abuse by their jailers. *See Whitley,* 475 U.S. at 318–19, 106 S.Ct. 1078.

Therefore, because the facts as alleged in the Amended Complaint do not rise to the level of a cognizable Eighth Amendment violation, I shall grant Defendants' motions to dismiss this cause of action.

### 3. *Palma's Fourth Amendment Claims*

■ Palma seeks to allege three causes of action under the Fourth Amendment: (1) unlawful arrest; (2) false imprisonment;[7] and (3) pre-conviction malicious prosecution. *See* Amended Complaint, ¶ 34. Each of these claims require Palma to establish that Defendants acted without probable cause. *See Luthe v. City of Cape May,* 49 F.Supp.2d 380, at 388, 390 (citing *Sharrar v. Felsing,* 128 F.3d 810, 817–18 (3d Cir.1997); *Groman v. Township of Manalapan,* 47 F.3d 628, 636 (3d Cir. 1995); *Lee v. Mihalich,* 847 F.2d 66, 69–70 (3d Cir.1988)). In support of their motion to dismiss, Defendants contend that Palma's admission in the Amended Complaint, that a grand jury indicted him on the offenses of making terroristic threats and creating a false public alarm, conclusively establishes that probable cause existed to arrest, detain and prosecute Palma, thus preventing him from stating a claim upon which relief can be granted. *See* Def. Brief at 6–7; *see als* Amended Compl., ¶ 21.

■ To state a § 1983 claim for unlawful arrest, a plaintiff must plead that he was arrested by a State actor without probable cause. *Sharrar,* 128 F.3d at 817–18. In addition, "where the police lack probable cause to make an arrest, the arrestee [also] has a claim under § 1983 for false imprisonment based on a deten-

tion pursuant to that arrest." *Groman,* 47 F.3d at 636 (citing *Thomas v. Kippermann,* 846 F.2d 1009, 1011 (5th Cir.1988)). Conversely, by definition "an arrest based on probable cause [can]not become the source of a claim for false imprisonment [or unlawful arrest]."[8] *Id.* (citing *Baker v. McCollan,* 443 U.S. 137, 142, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)); *see also Sharrar,* 128 F.3d at 817–18.

■ As with his claims for unlawful arrest and false imprisonment, to state a claim for malicious prosecution, Palma must allege that Defendants initiated the criminal prosecution without probable cause. *See Luthe,* 49 F.Supp.2d at 392. Specifically, to sufficiently plead "a § 1983 claim for malicious prosecution under the Fourth Amendment, ... [Palma] must [allege that]: (1)[D]efendants initiated a criminal proceeding against the plaintiff; (2) which resulted in a seizure; (3) the criminal prosecution ended in [Palma's] favor; (3) *the criminal prosecution was initiated without probable cause;* and (4)[D]efendants acted maliciously or for a purpose other than bringing the criminal defendant to justice." *Luthe,* 49 F.Supp.2d at 392 (citing *Gallo v. City of Philadelphia,* 161 F.3d 217, 222 (3d Cir. 1998); *Lee,* 847 F.2d at 69–70) (emphasis added).

■ "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Sharrar,* 128 F.3d at 817–18 (citing *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)) (additional citations, internal quotations and alterations omitted); *see also Luthe,* 49 F.Supp.2d at 388. "This standard is meant to safeguard citizens from rash and unreasonable interferences with privacy and to provide leeway for enforcing the

---

**7.** *See* note 8 *infra* and accompanying text.

**8.** Thus, while "[a] false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of

law[,]" *Baker,* 443 U.S. at 142, 99 S.Ct. 2689, the claim is derivative of a Fourth Amendment violation for arrest without probable cause. *See Groman,* 47 F.3d at 636.

law in the community's protection." *Sharrar*, 128 F.3d at 817–18 (citations omitted); *see also Luthe*, 49 F.Supp.2d at 388.

In § 1983 actions, "a grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute.... " *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir.1989). At the pleading stage, "this prima facie evidence may be rebutted by [allegations] that the presentment was procured by fraud, perjury or other corrupt means." *Id.* (stating that the allegations must be sufficient "to overcome the presumption of grand jury regularity") (citations omitted).[9]

In the Amended Complaint, Palma generally alleges:

> The detention, arrest, search, fingerprinting, photographing, seizure of his personal belongings, swearing out of a complaint, *indicting the defendant,* and otherwise charging the defendant with offenses and/or crimes, and forcing the defendant to undergo a trial and an appeal, were all done without probable cause, legal justification and/or were unlawful, and were violative of plaintiff's Constitutional, statutory, and/or common law rights and privileges.

*See* Amended Compl., ¶ 28 (emphasis added). Defendants contend that such general allegations fail the "heightened specificity" standard established by the Third Circuit and requiring "a higher threshold of factual specificity for civil rights complaints." *See* Def. Brief at 3 (citing *District Council 47 v. Bradley*, 795 F.2d 310, 313 (3d Cir.1986)). This "heightened specificity" standard was discussed by the Third Circuit in *Rose*, specifically in the context of determining the sufficiency of allegations of grand jury irregularity. *See Rose*, 871 F.2d at 353–54.

*Rose*, however, predates *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), where the Supreme Court held that federal courts may not apply a heightened pleading standard in civil cases alleging municipal liability under § 1983. *See id.* at 168–69, 113 S.Ct. 1160. Since *Leatherman* there has been much debate over whether this holding must be construed narrowly, *i.e.,* applying only to § 1983 cases involving municipal liability, or whether it can be construed more broadly to apply to all § 1983 actions. *See, e.g., Springdale Ed. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir.1998); *Johnson v. Kafrissen*, 1995 WL 355289, at *2 (E.D.Pa. June 5, 1995) (holding that "as a general matter, claims under § 1983 need not be pleaded with any greater particularity than other claims"); *Young v. Stauffer*, 1995 WL 225285, at *2 (E.D.Pa. Apr.17, 1995) (holding that "pursuant to [*Leatherman* ], civil rights complaints in this circuit are no longer subject to a heightened pleading standard"); *Bieros v. Nicola*, 860 F.Supp. 223, 225 (E.D.Pa.1994) (stating that "a heightened pleading standard does not apply to civil rights actions against individual defendants"); *cf. Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1594–96, 140 L.Ed.2d 759 (1998) (rejecting creation of special procedural requirements for § 1983 cases, even where the defense of qualified immunity is available); *but see D'Aurizio v. Palisades Park*, 963 F.Supp. 387 (D.N.J.1997) (stating that "claims for violations of civil rights in this circuit are subject to heightened standards of factual specificity in pleading"); *Briley v. City of Trenton*, 164 F.R.D. 26 (D.N.J.1995) (discussing role of heightened pleading standard in cases involving individual officers). In this district, courts have come out on both sides of the issue. *See White v. Fauver*, 19 F.Supp.2d 305, 311 n. 7 (D.N.J.1998) (Orlofsky, J.) (collecting cases and noting split in authority).

---

**9.** In *Montgomery v. DeSimone*, 159 F.3d 120 (3d Cir.1998), the Third Circuit rejected a similar presumption of probable cause, attaching as a result of a conviction in the state court proceeding giving rise to the § 1983 claims. *Id.* at 124–25.

Although the weight of authority clearly favors a broad reading of *Leatherman,* in resolving Defendants' motion to dismiss, I need not lend my voice to the debate. Accepting as true the well-pled allegations of fact and drawing all reasonable inferences in Palma's favor, *see Gomez,* 446 U.S. at 636, 100 S.Ct. 1920, I conclude that *Rose* is distinguishable on its facts and that the allegations of the Amended Complaint are sufficiently specific to overcome the presumption of grand jury regularity. First, Defendants concede that the only reasonable inference to be drawn from the allegations of the Amended Complaint is that Palma asserts that Defendants obtained the indictment through their fraudulent conduct and Bentley's allegedly false testimony to the grand jury. *See* Def. Brief at 8 (contending that "Bentley [should be afforded] absolute immunity for her grand jury testimony ...").

Second, in *Rose,* the Third Circuit specifically focused on the ambivalent and contradictory nature of the allegations of grand jury irregularity. *See Rose,* 871 F.2d at 353. Palma's Amended Complaint presents no such contradictory allegations. *See* Amended Compl., ¶¶ 20–21, 28.

Third, in *Rose,* the plaintiffs' failure to plead the grand jury irregularity with more specificity was inexcusable in light of the fact that the plaintiffs had obtained a copy of the presentment which detailed the substance of each witness' testimony. *Rose,* 871 F.2d at 354. Here, Defendants make no such contention. *See* Def. Brief at 6–7.

Fourth, while finding that the plaintiffs had failed to satisfy the heightened pleading standard in *Rose,* the Third Circuit vacated the District Court's dismissal of the § 1983 claims, opting instead to permit the plaintiffs to amend their complaint to plead their § 1983 claims with more speci-

ficity. *See Rose,* 871 F.2d at 354. Given that the only reasonable inferences to be drawn from the allegations of the Amended Complaint in this case are that Palma contends that Defendants pursued the indictment knowing that probable cause did not exist, and that Bentley allegedly testified falsely before the grand jury, as well as in swearing out the Criminal Complaint to cover up the alleged lack of probable cause, *see* Amended Compl., ¶¶ 20–21, no positive end would be furthered by affording Palma the opportunity to plead his § 1983 claims with greater specificity.

Finally, to the extent that Palma alleges claims against Atlantic County and the Sheriff's Department, under *Leatherman,* no heightened pleading standard even arguably applies. *Leatherman,* 507 U.S. at 168–69, 113 S.Ct. 1160. Thus, I conclude that the allegations of grand jury irregularity set forth in the Amended Complaint, as well as the reasonable inferences to be drawn from those allegations, are sufficient to rebut the prima facie evidence of probable cause reflected in the record by the return of an indictment charging Palma with offenses.[10]

Having determined that Palma has sufficiently alleged that the indictment "was procured by fraud, perjury or other corrupt means[,]" I must next determine whether Palma has pled the requisite elements of his Fourth Amendment claims, specifically: unlawful arrest, false imprisonment and pre-conviction malicious prosecution. As I noted above, to state a claim for unlawful arrest and false imprisonment, a plaintiff must allege an arrest and detention made without probable cause. *See Sharrar,* 128 F.3d at 817–18; *Groman,* 47 F.3d at 636. Here, Palma clearly alleges that "[t]he detention [and] arrest ... were ... done without probable cause...." *See* Amended Compl., ¶ 28. Thus, Palma has sufficiently asserted a

---

**10.** In reaching this conclusion, I note that the minimal allegations of grand jury irregularity in the Amended Complaint, while marginally sufficient to avoid a motion to dismiss at the pleading stage, must be supported with "evi-

dence that the presentment [or indictment] was procured by fraud, perjury or other corrupt means" to avoid dismissal at the summary judgment stage of the litigation. *Rose,* 871 F.2d at 353 (citations omitted).

violation of his Fourth Amendment right to be free from unreasonable searches and seizures.

Palma's claim for pre-conviction malicious prosecution can similarly be addressed in a summary fashion. Palma specifically alleges that Defendants "initiated a criminal proceeding against [him;] which resulted in a seizure; [that] the criminal prosecution ended in [Palma's] favor; [and] the criminal prosecution was initiated without probable cause[,]" *Luthe*, 49 F.Supp.2d at 392; *see also* Amended Compl., ¶¶ 19–25 (alleging initiation and continuation of criminal proceedings), 18–25 (alleging seizure), 27 (alleging termination in Palma's favor), and 28 (alleging lack of probable cause).

 In addition, while the Third Circuit recently observed in *Gallo v. City of Philadelphia*, that the actual malice element of a § 1983 claim for malicious prosecution may not survive the Supreme Court's plurality opinion in *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), *see Gallo*, 161 F.3d at 217, 222 n. 6 (3d Cir.1998), in *Luthe*, I stated that "while the *Gallo* court suggested that the continued validity of the *Lee* standard was suspect, the Third Circuit did not abandon the standard." *Luthe*, 49 F.Supp.2d at 392. Accordingly, in *Luthe*, I held that, until the Supreme Court or the Third Circuit holds otherwise, actual malice, as discussed in *Lee v. Mihalich*, remains an element of a § 1983 claim for malicious prosecution. *Luthe*, 49 F.Supp.2d at 392.

In the Amended Complaint, Palma specifically alleges that "Bentley, without probable cause, *maliciously* and with full knowledge that plaintiff had not violated any statute or law, signed [criminal] complaints against the plaintiff charging him with two indictable offenses...." *See* Amended Compl., ¶ 20 (emphasis added). In addition, Palma alleges that all Defendants continued the criminal prosecution with knowledge that it was the result of "the unlawful and abusive propensities of

the defendant Sheriff Officers ..." *See* Amended Compl., ¶¶ 28–30. Thus, because it is clear that Palma has alleged actual malice on the part of Defendants, I conclude that he has sufficiently pled a § 1983 cause of action for pre-conviction malicious prosecution.

### 4. *Palma's Post–Conviction Malicious Prosecution Claim*

In *Luthe v. City of Cape May*, I discussed the Third Circuit's recent opinions in *Torres* and *Gallo*, which dealt with claims for malicious prosecution in the wake of the Supreme Court's plurality opinion in *Albright*. I wrote:

In *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), Justice Rehnquist, writing for the plurality, held that a plaintiff's claim for malicious prosecution arising out of an arrest and incarceration ... did not trigger the plaintiff's substantive due process rights, rather, the plaintiff's constitutional claim, if any, implicated only the Fourth Amendment. *See id.* at 274[, 114 S.Ct. 807]. In *Torres v. McLaughlin*, 163 F.3d 169 (3d Cir.1998), the Third Circuit read Justice Rehnquist's plurality opinion narrowly, concluding that the Fourth Amendment only protects individuals from malicious criminal prosecutions from the time of the arrest until the time of pre-trial detention. *See Torres v. McLaughlin*, 163 F.3d 169, 174 (3d Cir.1998) (holding that in § 1983 claims for malicious prosecution, "the Fourth Amendment [applies] to those actions which occur between arrest and pre-trial detention"). Consistent with this narrow reading of *Albright*, the Third Circuit concluded that § 1983 claims for malicious prosecution arising out of post-conviction incarceration are cognizable as violations of the plaintiff's substantive due process rights. *Torres*, 163 F.3d at 172–74 (construing plurality opinion in *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994))....
In *Gallo v. City of Philadelphia*, 161

F.3d 217 (3d Cir.1998), decided eight days prior to *Torres*, the Third Circuit wrote:

> *Albright* implies that prosecution without probable cause is not, in and of itself, a constitutional tort. Instead, the constitutional violation is the deprivation of liberty accompanying the prosecution. Thus, ... a plaintiff asserting a malicious prosecution claim must show some deprivation of liberty consistent with the concept of "seizure" [under the Fourth Amendment].

*Gallo*, 161 F.3d at 222 (internal quotations, footnote and citations omitted). Thus, *Gallo* makes it clear that a necessary predicate for the elevation of a claim for malicious prosecution from a mere tort to a constitutional violation, is the presence of state action resulting in a seizure within the meaning of the Fourth Amendment.

*Luthe*, 49 F.Supp.2d at 391-92.

While the Third Circuit in *Torres* held that "a section 1983 [post-conviction] malicious prosecution claim may ... include police conduct that violates ... the procedural due process clause or other explicit text of the Constitution[,]" *Torres*, 163 F.3d at 173, the court did not define the elements of a post-conviction claim for malicious prosecution. The Third Circuit's emphasis in *Gallo* on a seizure resulting in the loss of liberty, however, sheds significant light on this issue. *Gallo*, 161 F.3d at 222. Although the liberty interest protected by a post-conviction claim for malicious prosecution may be rooted in the Fourteenth Amendment's Due Process Clause, the critical element of the claim, as I pointed out in *Luthe,* is the existence of a Fourth Amendment seizure resulting in a loss of liberty. *See Gallo*, 161 F.3d at 222; *Luthe*, 49 F.Supp.2d at 392.

■ Therefore, at a minimum, to state a post-conviction claim for malicious prose-

cution, a plaintiff must allege that he or she was deprived of liberty as result of an unlawful seizure, *i.e.*, a seizure without probable cause. In addition, as the Supreme Court emphasized in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), one element that must be alleged and proved in a malicious prosecution action is the termination of the prior criminal proceeding in favor of the plaintiff. *Id.* at 484–85, 114 S.Ct. 2364. The Supreme Court stated that "to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit [an impermissible] collateral attack on the conviction through the vehicle of a civil suit." *Id.* (stating that the Supreme Court "has long expressed ... concerns for finality and consistency [of criminal convictions] and has generally declined to expand opportunities for collateral attack") (footnote omitted).

The elements of a post-conviction claim for malicious prosecution, specifically, a criminal proceeding; a seizure; lack of probable cause; and termination of the proceeding in the plaintiff's favor, mirror four of the five elements identified in *Luthe* as the elements of a pre-conviction claim for malicious prosecution. *See Luthe*, 49 F.Supp.2d at 392; *see also* Section III.A.3 *supra.* Whether or not the fifth element of a preconviction claim for malicious prosecution, namely, actual malice, applies to a post-conviction claim is less clear, particularly in light of the Third Circuit's dictum to the contrary in *Gallo. Gallo,* 161 F.3d at 222 n. 6; *see* Section III.A.3 *supra.*

■ In resolving Defendants' motion to dismiss, however, I need not decide this issue. As stated previously in Section III. A.3 *supra,* Palma has sufficiently alleged the elements of a preconviction claim for malicious prosecution, including actual malice.[11] Thus, regardless of whether ac-

---

11. Although Defendants do not raise the issue, it could be argued that Palma did not suffer a post-conviction seizure because he

was not sentenced to a period of incarceration. *See* Amended Compl., ¶ 25. Palma instead was simply fined and sentenced to ten

tual malice is an element of a claim for post-conviction malicious prosecution, I conclude that Palma has sufficiently pled the necessary elements of the claim.

Having determined that Palma has sufficiently pled his § 1983 claims for retaliatory prosecution, unlawful arrest, false imprisonment, and pre- and post-conviction malicious prosecution, I must next consider whether Defendants' asserted defenses preclude Palma from stating claims upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6).

### B. *Defendant's Asserted Defenses*

#### 1. *Respondeat Superior Liability*

Defendants contend that, with respect to McGettigan and Coleman, Palma's claims must be dismissed because he has failed to state some affirmative conduct by these supervisory officials that played a role in the alleged deprivation of Palma's civil rights. *See* Def. Brief at 4. In support of this contention, Defendants cite *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for the proposition that "[i]t is clear the neither an entity nor a supervisory individual may be responsible for a civil rights violation through the doctrine of *Respondeat Superior.*" *See* Def. Brief at 4.

■ Defendants are correct; it is well established that, in order to state a civil rights claim, a plaintiff must allege that "[a] defendant ... [had] personal involvement in the alleged wrongs[,] liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988); *White*, 19 F.Supp.2d at 319. Considering respondeat superior liability, in *Robinson v. City of Pittsburgh*, the Third Circuit

stated "that 'actual knowledge and acquiescence' suffices for supervisory liability because it can be equated with 'personal direction'...." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997).

■ In support of their respondeat superior defense, Defendants contend:

Plaintiff has failed to make a showing with respect to either Defendant McGettigan or Coleman. There is absolutely no evidence of any active or knowing denial of the Plaintiff's civil rights by these Defendants. Because neither individual can be held responsible through the doctrine of *Respondeat Superior*, Plaintiff has failed to set forth any claim against these two defendants for which relief may be granted.

*See* Def. Brief at 5. Defendants forget that this is a motion to dismiss and not a motion for summary judgment. Palma is not required to come forward with "evidence" of McGettigan's and Coleman's actual knowledge and acquiescence at this stage of the litigation. Palma need only set forth well-pled allegations of fact tending to show that these Defendants actually participated or knowingly acquiesced in the alleged deprivation of Palma's civil rights. *Gomez*, 446 U.S. at 636, 100 S.Ct. 1920. Palma clearly meets this liberal standard.

In the Amended Complaint, Palma alleges that Coleman personally participated in his allegedly unlawful arrest and detention. *See* Amended Compl., ¶ 19 (alleging that "Coleman [as well as other Defendants] ... unlawfully and without probable cause searched the plaintiff, fingerprinted him, photographed him, detained him, and seized [his personal property] ...."). In addition, with respect to Defendant, McGettigan, Palma alleges:

hours community service. Although the fines assessed against Palma cannot reasonably be considered a deprivation of liberty as required by *Albright* and *Gallo*, given the broad definition "seizure" adopted by the Third Circuit in *Gallo*, the sentence of community service, and the attendant loss of liberty, sufficiently states

a post-conviction seizure. *See Gallo*, 161 F.3d at 224–25 (adopting Justice Ginsburg's broad definition of "seizure" which provides that a court ordered appearance constitutes a seizure). As the Third Circuit stated, the severity of a seizure "is germane to damages not liability." *Id.* at 225.

[T]he ... unlawful and unwarranted treatment to which [Palma] was subjected was consistent with [Defendants'] institutionalized practice ... which was known to and ratified by ... McGettigan ... having at no time taken any effective action· to prevent personnel from the Sheriff's Office from continuing to engage in such conduct.... McGettigan ... had prior notice of the unlawful and abusive propensities of the defendant Sheriff Officers but took no steps to ... correct their abuses of authority, or to discourage their unlawful use of authority.... McGettigan ... authorized, tolerated as institutionalized practices, and ratified the misconduct [of the defendant Sheriff Officers] ... by: [failing to discipline the defendant Sheriff Officers; failing to take adequate precautions in hiring the defendant Sheriff Officers; and failing to establish a functioning and meaningful departmental system for dealing with complaints of abuse of conduct]....

*See* Amended Compl., ¶¶ 29–31.

 While it is true, as Defendants point out, *see* Def. Brief at 5–6, that supervisory officials have no affirmative duty to train or discipline an offending subordinate, *see Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986) (citing *Rizzo v. Goode,* 423 U.S. 362, 377, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)), "[w]here a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (*i.e.,* tacitly assented to or accepted) the subordinate's conduct." *Robinson,* 120 F.3d at 1294 (footnote omitted); *see also Montgomery v. DeSimone,* 159 F.3d 120, 127 (3d Cir.1998); *Bonenberger v. Plymouth Township,* 132 F.3d 20, 25 (3d Cir.1997). Taking the factual allegations of the Amended Complaint to be true, and drawing all reasonable inferences in Palma's favor, I find that Palma has sufficiently alleged that McGettigan knew

that the defendant Sheriff Officer's continued prosecution of Palma was in violation of his civil rights and that McGettigan "fail[ed] to act to stop the subordinate[s] from doing so[.]" *See Robinson,* 120 F.3d at 1294.

Therefore, I conclude that the Amended Complaint contains sufficient allegations of the personal involvement of ·Defendant, Coleman, and the knowledge and acquiescence of Defendant, McGettigan, to withstand Defendants' motion to dismiss. Accordingly, to the extent that Defendants, McGettigan and Coleman, seek dismissal of Palma's claims on the basis of respondeat superior liability, the motion shall be denied. To the extent that Palma seeks to allege claims against McGettigan for his failure to train, supervise, or discipline the defendant Sheriff Officers, Palma's claims are barred. *Montgomery,* 159 F.3d at 127.

### 2. *Municipal Liability*

Defendants next contend that "[w]ith respect to Atlantic County and the Atlantic County Sheriff's Department, Plaintiff has ... failed to state a claim upon which relief can be granted [because] ... [he] has failed to point out a specific policy which is violative of his constitutional rights[.]" *See* Def. Brief at 5. I disagree.

 As I stated in *Luthe,* as with supervisory employees, "municipalities 'cannot be held liable under a theory of respondeat superior[.]'" *Luthe,* 49 F.Supp.2d at 398 (quoting *Montgomery v. DeSimone,* 159 F.3d 120, 126 (3d Cir. 1998)). "[M]unicipal liability only arises when a constitutional deprivation results from an official custom or policy." *Montgomery,* 159 F.3d at 126 (citing *Monell,* 436 U.S. at 691–94, 98 S.Ct. 2018). "[A] municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatherman,* 507 U.S. at 166, 113 S.Ct. 1160; *see also Luthe,* 49 F.Supp.2d at 398. "Municipal 'policies' or 'customs' for § 1983 purposes are such 'practices of [government] officials as are so permanent

and well-settled as to constitute a "custom or usage" with the force of law.'" *Luthe,* 49 F.Supp.2d at 392 (quoting *Sostarecz v. Misko,* 1999 WL 239401, at *9 (E.D.Pa. Mar.26, 1999) (citing *Monell,* 436 U.S. at 691, 98 S.Ct. 2018) (internal alterations omitted)). In addition, the Third Circuit has repeatedly held:

> [A] ˙failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate.

*Montgomery,* 159 F.3d at 127 (citing *Bonenberger,* 132 F.3d at 25).

 Thus, to the extent that Palma's "claims against [Atlantic County and the Sheriff's Department] rest on allegations that these defendants are directly responsible for [the defendant Sheriff Officers'] action[s] and that they failed to adequately train, discipline or control [the defendant Sheriff Officers] ... they are barred under *Monell." DeSimone,* 159 F.3d at 127; *see* Amended Compl., ¶¶ 30–31. This conclusion, however, does not end this Court's inquiry.

 In addition to alleging a failure to train, supervise or discipline, Palma has alleged that Atlantic County and the Sheriff's Department violated his civil rights pursuant to an "institutionalized" policy or custom. *See* Amended Compl., ¶¶ 28–31. Palma specifically alleges that the "unlawful and unwarranted treatment to which plaintiff was subjected [by the defendant Sheriff Officers] was consistent with the *institutionalized practice* of the Atlantic County Sheriff's Department, which was known to and ratified by ... Atlantic County...." *Id.* (emphasis added).

In opposition to the motion to dismiss, Palma explains this allegation, contending that "[he] clearly fell prey to the policy of the County and the Sheriff's Department to support its [sic] officers blindly and prosecute any complaints filed by its [sic] officers to the fullest extent[,]" notwithstanding the merits of the criminal complaints. *See* Pl. Brief at 11. I find that the policy identified by Palma's contention can reasonably be inferred from the facts alleged in the Amended Complaint, particularly: (1) the factual allegation that the Atlantic County Prosecutor's Office downgraded the offenses charged in the criminal complaint and indictment from two felonies counts to two Petty Disorderly Persons Offenses; and (2) the factual allegation that "the Appellate Division reversed the plaintiff's conviction finding that there was a total lack of proof to sustain the conviction ... [and] that the charge and conviction were without foundation." *See* Amended Compl., ¶¶ 21, 27 (internal quotations omitted).

Thus, unlike the plaintiffs in *DeSimone* who "failed to allege any action or inaction by the municipal defendants that ... implicate[d] the type of deliberate indifference required for section 1983 municipal liability[,]" *DeSimone,* 159 F.3d at 127, here, Palma has alleged that Atlantic County and the Sheriff's Department maintained an "institutionalized" policy of prosecuting criminal complaints regardless of their merit, thus perpetuating the "unlawful and abusive propensities" of the defendant Sheriff Officers. *See* Amended Compl., ¶¶ 29–30. Accordingly, I shall deny Defendants' motion to dismiss at this time and permit Palma's claims to go forward against Atlantic County and the Atlantic County Sheriff's Department.

### 3. *Absolute Immunity*

 Defendants contend that Defendant, Bentley, "is absolutely immune from liability" because the doctrine of absolute immunity "has ... been extended to police officer witnesses accused of perjury" in testifying during a criminal trial and before a grand jury. *See* Def. Brief at 1. In support of this contention, Defendants cite

*Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In *Briscoe,* the United States Supreme Court held that police officers are entitled to absolute immunity from liability for claims brought pursuant to § 1983 arising out of allegedly perjured testimony at criminal trials. *Briscoe,* 460 U.S. at 342, 103 S.Ct. 1108. The Supreme Court stated that the absolute immunity afforded to trial witnesses at common law was firmly supported by public policy. *See id.* at 332–33, 103 S.Ct. 1108. Specifically, the Supreme Court observed:

> [I]n damages suits against witnesses, the claims of the individual must yield to the dictates of public policy, which requires that *the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible.* . . . [W]itnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability. Even within the constraints of the witness's oath there may be various ways to give an account or to state an opinion. . . . A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence. But *the truth-finding process is better served if the witness's testimony is submitted to the crucible of the judicial process so that the factfinder may consider it, after cross–examination,* together with the other evidence in the case to determine where the truth lies.

*Briscoe,* 460 U.S. at 332–33, 103 S.Ct. 1108 (citations and footnotes omitted, emphasis added). Considering these common law policies, the *Briscoe* court concluded that these rationales applied with equal force to police officer witnesses. The Court stated:

> [O]ur cases clearly indicate that immunity analysis rests on functional catego-

ries, not on the status of the defendant. A police officer on the witness stand performs the same functions as any other witness; *he is subject to compulsory process, takes an oath, responds to questions on direct examination and cross-examination, and may be prosecuted subsequently for perjury.*

*Id.* at 342, 103 S.Ct. 1108 (footnote omitted, emphasis added).

In *Williams v. Hepting,* 844 F.2d 138 (3d Cir.1988), the Third Circuit extended the rule in *Briscoe* to cover pretrial proceedings, such as preliminary hearings and suppression hearings. *See id.* at 140–41. In reaching this decision, the Third Circuit relied upon its previous holding in *Brawer v. Horowitz,* 535 F.2d 830 (3d Cir.1976), applying common law immunity to lay witnesses appearing in federal court, as well as the policies discussed in *Briscoe. Williams,* 844 F.2d at 142. The Third Circuit stated in *Williams:*

> Witnesses at trial are afforded absolute immunity to encourage complete disclosure in judicial proceedings. The thought is that witnesses should be encouraged to tell all they know without fearing reprisal, because the tools of the judicial process—rules of evidence, cross-examination, the fact-finder, and the penalty of perjury—will be able to uncover the truth. The interest in complete disclosure is no less diminished at the pretrial stage, at a preliminary hearing, or at a suppression hearing. The tools of the judicial process are no less present to ferret out the truth at these times. In addition, the criminal defendant enjoys the immediate right at all stages of the judicial process to submit his or her own evidence and to cross-examine the witnesses.

*Williams,* 844 F.2d at 142 (citations omitted). The *Williams* court then collected cases from other circuits applying the doctrine of absolute immunity to witnesses testifying before a grand jury. *See id.* (citing *Macko v. Byron,* 760 F.2d 95, 97 (6th Cir.1985); *San Filippo v. United*

*States Trust Co.,* 737 F.2d 246, 254 (2d Cir.1984); *Kincaid v. Eberle,* 712 F.2d 1023 (7th Cir.1983); *Briggs v. Goodwin,* 712 F.2d 1444, 1448–49 (D.C.Cir.1983)).

Although the Third Circuit cited to cases applying absolute immunity to grand jury witness testimony, the *Williams* court did not adopt the holdings of theses cases. Rather, the *Williams* court specifically held that "that [a] witness ... is entitled to absolute immunity from civil liability for his testimony at ... preliminary hearing[s] and suppression hearings." In addition, the Third Circuit has stated that *Williams* holding "applies to testimony given in preliminary hearings[.]" *Kulwicki v. Dawson,* 969 F.2d 1454, 1467 n. 16 (3d Cir. 1992). The Second Circuit has construed the holding of *Williams* to apply only to "adversarial pretrial proceedings." *White v. Frank,* 855 F.2d 956, 961 (2d Cir.1988). Thus, while it is clear that the Third Circuit has extended the rule of *Briscoe* to pretrial adversarial hearings, where a criminal defendant can "submit his or her own evidence and .... cross-examine the witnesses[,]" *Williams,* 844 F.2d at 142, it is less clear whether *Williams* can be read to apply the doctrine of absolute immunity to grand jury witness testimony. This uncertainty is the result of the Supreme Court's decision in *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), and the Third Circuit's discussion of *Malley* and *Briscoe* in *Kulwicki v. Dawson,* 969 F.2d at 1467 n. 16.

In *Malley,* the Supreme Court held that police officers when acting as complaining witnesses, like lay witnesses, are not entitled to absolute immunity. *Malley,* 475 U.S. at 340–41, 106 S.Ct. 1092. As in *Briscoe,* the Supreme Court in *Malley* looked to the common law of immunities, stating:

> [C]omplaining witnesses were not absolutely immune at common law. In 1871, the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made

maliciously and without probable cause. Given malice and the lack of probable cause, the complainant enjoyed no immunity. The common law thus affords no support for [the proposition that a complaining witness should be absolutely immune from civil liability].

*Malley,* 475 U.S. at 340–41, 106 S.Ct. 1092 (footnote omitted). In addition, the Supreme Court stated that police officers acting as complaining witnesses are sufficiently protected by the doctrine of qualified immunity, such that extension of the doctrine of absolute immunity was unnecessary. *See id.* at 341, 106 S.Ct. 1092.

Since *Malley,* numerous circuit courts have held that *Malley* carves out an exception to the rule of *Briscoe.* Generally, these courts have held that "there is no immunity for knowing false statements made by a complaining witness in a grand jury proceeding[,]" including police officers. *Kulwicki,* 969 F.2d at 1467 n. 16 (construing *Anthony v. Baker,* 955 F.2d 1395, 1401 (10th Cir.1992)); *see also Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir.1997) (same, collecting cases from Second, Fifth, Seventh, and Tenth Circuits); *White,* 855 F.2d at 959.

In an attempt to reconcile *Malley, Briscoe,* and *Williams* with the complaining witness exception identified by other circuits, in *Kulwicki,* the Third Circuit noted:

> Some courts have pointed out the tension between the Supreme Court's sweeping protection of all witness testimony in *Briscoe,* and the common law distinction, noted in *Malley v. Briggs* between lay witnesses (absolutely protected) and complaining witnesses in malicious prosecution suits (not absolutely protected). In fact, this court has been criticized for failing to emphasize the distinction. *See White,* 855 F.2d at 961, citing this court's opinion in *Williams v. Hepting, supra.* In *Malley,* the Supreme Court noted, in the context of rejecting immunity for a police officer's baseless application for an arrest warrant, that complaining witnesses

were not afforded immunity at common law. The Court was not addressing the issue of testimony at trial, as it did in *Briscoe*. We decline to interpret the language in *Malley* as overriding the broad witness protection announced in *Briscoe*.

*Kulwicki*, 969 F.2d 1454 n. 16 (additional citations omitted). Thus, footnote 16 clearly states that the Third Circuit does not read *Malley* as overriding *Briscoe*. *Id.* In other words, in the wake of *Malley*, a complaining witness testifying at trial is still provided absolute immunity from civil liability.

Footnote 16 in *Kulwicki*, however, does not resolve the issue of whether the holding of *Williams* applies to the testimony of a complaining witness before a grand jury. This was the issue addressed by the *Harris*, *Anthony* and *White* courts. After considering the public policies identified in *Briscoe* and *Williams*, the factual circumstances of *Williams*, and the Supreme Court's holding in *Malley*, I conclude that the Third Circuit's holding in *Williams* does not provide absolute immunity to police officers acting as complaining witnesses before a grand jury.

First, as the Third Circuit noted in *Kulwicki*, the *Williams* court applied the rule of *Briscoe* "to testimony given in preliminary hearings[.]" *Kulwicki*, 969 F.2d at 1467 n. 16; *see also Williams*, 844 F.2d at 143. The *Williams* court found, like the *Briscoe* court before it, that a criminal defendant has ample procedural tools to uncover alleged perjured testimony during a judicial proceeding, such that it was unnecessary to abrogate the common law doctrine of absolute witness immunity. *See Williams*, 844 F.2d at 142; *see also Briscoe*, 460 U.S. at 342, 103 S.Ct. 1108. Specifically, both the Supreme Court in *Briscoe* and the *Williams* court observed that a criminal defendant's right to cross examine the alleged perjured witness safeguarded "the truth-finding process[,]" and militated against abrogating the common law doctrine of absolute immunity in *Bris-*

*coe*, and in favor of extending the immunity to pretrial adversarial proceedings as in *Williams*. *Briscoe*, 460 U.S. at 334, 103 S.Ct. 1108 (citations omitted); *Williams*, 844 F.2d at 141–42. Cross examination, as well as other procedural safeguards, such as the rules of evidence, the right to present rebuttal evidence, and the presence and representation of counsel, are not available to the criminal defendant at the grand jury stage of the criminal prosecution.

Second, *Williams* did not involve the testimony of a complaining witness. The witness at issue in *Williams* was the plaintiff's co-defendant in the criminal proceeding who had made a deal with the prosecution in return for his testimony against the plaintiff. *See Williams*, 844 F.2d at 140. The plaintiff in *Williams* alleged that the police and prosecution had pressured the witness into "falsely identify[ing] [the plaintiff] as the driver of a car that police chased from the scene of the murder...." *Id.* The plaintiff sought to hold the witness civilly liable for his allegedly perjured testimony at a preliminary hearing. Clearly, the witness testimony in *Williams* is factually distinguishable from a situation where a defendant is alleged to have sworn out a false criminal complaint and then testified falsely in support of that complaint before a grand jury. *See, e.g., Harris*, 126 F.3d at 1199; *cf. Malley*, 475 U.S. at 340–41, 106 S.Ct. 1092 (finding that complaining witnesses are not entitled to absolute immunity). In addition, this factual dissimilarity between fact witnesses and complaining witnesses explains why the Third Circuit in *Williams* did not cite *Malley*, although it had been decided by the Supreme Court two years earlier.

Third, as the Supreme Court stated in *Briscoe*, whether a defendant is entitled to immunity "rests on functional categories, not on the status of the defendant." *Briscoe*, 460 U.S. at 342, 103 S.Ct. 1108. "A police officer on the witness stand performs the same functions as any other witness[.]" *Id.* At common law, a complaining lay witness was not absolutely

immune from civil liability on a claim for malicious prosecution for knowing false testimony. *See Curtis v. Bembenek*, 48 F.3d 281, 285–86 n. 5 (7th Cir.1995) (citing *Malley*, 475 U.S. at 340, 106 S.Ct. 1092; *Anthony*, 955 F.2d at 1399; *White*, 855 F.2d at 959). Thus, applying the functional analysis discussed in *Briscoe*, a police officer acting as a complaining witness should likewise not be absolutely immune for knowing false testimony before a grand jury.

Finally, as the Supreme Court discussed in *Malley*, depriving a police officer of absolute immunity for his or her allegedly false statements in initiating and continuing a criminal prosecution does not leave a police officer defenseless in the face of a § 1983 claim arising out of allegedly perjured grand jury testimony. *Malley*, 475 U.S. at 341, 106 S.Ct. 1092. The doctrine of qualified immunity remains available to hold police officers immune from civil liability where their actions are objectively reasonable, regardless of their subjective intent. *See id.* In *Malley*, the Supreme Court observed:

> As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law. Under the [qualified immunity] standard ... an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner. The [qualified immunity] standard is specifically designed to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment, and we believe it sufficiently serves this goal. Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that [their actions were lawful]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Id.* (citations and footnotes omitted).

■ Accordingly, for these reasons I hold that the absolute immunity extended

in *Williams*, and as discussed in footnote 16 of *Kulwicki*, applies to pretrial adversarial proceedings in which the criminal defendant has the opportunity to uncover the truth of the police officer's alleged perjured testimony through cross examination, rebuttal evidence, and the assistance of counsel. Where, however, the police officer is acting as a complaining witness before the grand jury, he .or she is only entitled to qualified immunity from civil liability on a claim for malicious prosecution arising out of any alleged perjured testimony. *Cf. Malley*, 475 U.S. at 340–42, 106 S.Ct. 1092. I conclude that this balance between *Malley*, *Briscoe*, and *Williams*, comports with the Third Circuit's reasoning in footnote 16 of *Kulwicki*.

I now turn to Defendants' contention that Bentley is absolutely immune from civil liability arising out of her trial and grand jury testimony. Under *Briscoe* and *Williams*, I conclude that Bentley is undeniably entitled to absolute immunity from civil liability arising out of her criminal trial testimony.

■ Regarding Bentley's grand jury testimony, Palma alleges that Bentley "signed complaints against the plaintiff charging him with [making terroristic threats and creating a false disturbance]." *See* Amended Compl., ¶ 20. In addition, Palma alleges that he made the statement, which precipitated the criminal prosecution, to Bentley. Thus, when Bentley signed the criminal complaints and testified in support of the indictment before the grand jury, she was acting as a complaining witness. Accordingly, to the extent that Palma alleges that Bentley's testimony before the grand jury unlawfully resulted in the issuance of the indictment, *see* Amended Compl., ¶ 28, Bentley is not entitled to absolute immunity from civil liability on Palma's claims for malicious prosecution.

### 4. Qualified Immunity

Defendants contend that Palma's civil rights claims against Bentley, Trotta, San-

tora, Coleman and McGettigan, must be dismissed because these Defendants are entitled to the defense of qualified immunity. *See* Def. Brief at 8. Palma opposes the motion, contending that the actions of the defendant Sheriff Officers were objectively unreasonable. *See* Pl. Brief at 11–12.

 "The doctrine of qualified immunity protects police officers performing discretionary functions...." *Luthe,* 49 F.Supp.2d at 389 (citing *Wilson v. Layne,* —— U.S. ——, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). "When a police officer initiates a criminal prosecution without probable cause, the officer may be liable in a civil rights suit for damages, unless shielded by the doctrine of qualified immunity." *Luthe,* 49 F.Supp.2d at 395–96 (citing *Orsatti v. New Jersey State Police,* 71 F.3d 480, 483 (3d Cir.1995)) (internal alterations, quotations and additional citations omitted). Qualified immunity "shield[s officers] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharrar,* 128 F.3d at 826 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *see also Luthe,* 49 F.Supp.2d at 389.

 "[W]hen a qualified immunity defense is raised a court first should determine whether the plaintiff has asserted a violation of a constitutional right at all." *Larsen v. Senate of the Commonwealth of Pennsylvania,* 154 F.3d 82, 86 (3d Cir. 1998) (citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). As set forth in Section III.A *supra,* Palma has sufficiently asserted violations of his First and Fourth Amendment rights. *See Losch,* 736 F.2d at 907–10 (retaliatory prosecution); *see also Luthe,* 49 F.Supp.2d at 388–93 (collecting and discussing Third Circuit and Supreme Court cases defining constitutional claims for unlawful arrest, false imprisonment and malicious prosecution). Having answered this preliminary question in the affirmative, I

next "need ... [to] determine whether [D]efendant[s][are] entitled to qualified immunity on the grounds that [their] conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Larsen,* 154 F.3d at 86–87 (citing *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727). Because Defendants have raised the defense of qualified immunity in this Rule 12(b)(6) motion to dismiss, I "must accept [Palma's] allegations as true and afford him the benefit of all reasonable inferences." *Id.* (citing *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996)).

 In *Larsen,* the Third Circuit stated:

A right is "clearly established" for qualified immunity purposes only if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. Thus, defendants are entitled to qualified immunity if reasonable officials in their position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful. Even where officials clearly should have been aware of the governing legal principles, they are nevertheless entitled to immunity if based on the information available to them they could have believed their conduct would be consistent with those principles.

*Larsen,* 154 F.3d at 87 (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (additional citations, internal quotations and alterations omitted). In light of these principles, I must determine whether Palma has alleged violations of clearly established rights. *See id.*

a. *Palma's First Amendment Retaliation Claim and Qualified Immunity*

 Considering whether government officials are entitled to qualified immunity

in cases involving First Amendment claims for retaliation, such as Palma's claim for retaliatory prosecution, *see* Section III.A.1 *supra,* poses particularly difficult analytical problems for the Court. An essential element of a First Amendment retaliation claim is the defendant's subjective motivation. *See Larsen,* 154 F.3d at 94 (citing *Feldman,* 43 F.3d at 829). Thus, as the Third Circuit explained in *Larsen:*

> [A defendant's assertion of the qualified immunity defense] requires the court to apply the objective reasonableness standards of the qualified immunity doctrine to the subjective element of a First Amendment retaliation claim, and thus calls for the somewhat illogical inquiry into whether a person reasonably could have thought that he in fact thought something. The qualified immunity analysis requires a determination as to whether reasonable officials could believe that their conduct was not unlawful even if it was in fact unlawful. In the context of a First Amendment retaliation claim, that determination turns on an inquiry into whether officials reasonably could believe that their motivations were proper even when their motivation were in fact retaliatory. Even assuming that this could be demonstrated under a certain set of facts, it is an inquiry that cannot be conducted without factual determinations as to the officials' subjective beliefs and motivations, and thus cannot properly be resolved on the face of the pleadings, but rather can be resolved only after the plaintiff has had an opportunity to adduce evidence in support of the allegations that the true motive for the conduct was retaliation rather than the legitimate reason proffered by the defendants.... [A]t this juncture we must accept [the plaintiff's] allegations that [the defendants'] true reasons were retaliatory, allegations which state a claim for violation of clearly established rights under the First Amendment, precluding dismissal on qualified immunity grounds.

*Larsen,* 154 F.3d at 94–95 (citations and quotations omitted).

Therefore, because I concluded in Section III.A.1 *supra* that Palma sufficiently alleged a cause of action for retaliatory prosecution, based on *Larsen,* I must accept his allegations of retaliatory motive as true. Accordingly, at this early stage of the litigation, I shall deny without prejudice Defendants' motion to dismiss the claim on the basis of qualified immunity.

The Court, however, is aware that the qualified immunity issue should be resolved at the earliest possible point in the litigation to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government.'" *Anderson v. Creighton,* 483 U.S. 635, 645 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (quoting *Harlow,* 457 U.S. at 817, 102 S.Ct. 2727). In *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), the Supreme Court provided insight into how District Courts should proceed when confronted with the need for factual discovery before deciding whether a defendant is entitled to qualified immunity. Writing for the Court, Justice Stevens wrote:

> The trial judge can ... manage the discovery process to facilitate prompt and efficient resolution of [the qualified immunity issue]; as the evidence is gathered, the defendant-official may move for ... summary judgment on the objective issues that are potentially dispositive.... [T]he judge should give priority to discovery concerning issues that bear upon the qualified immunity defense, such as the actions the official actually took, since that defense should be resolved as early as possible.

*Id.* at 1597.

■ Accordingly, I shall permit the parties to take discovery limited to the issue of whether "the [defendant Sheriff Officers'] true motive for the conduct was retaliation rather than [some other] legitimate reason...." *Larsen,* 154 F.3d at 94. The parties shall have ninety days

from the entry of this Opinion and its accompanying Order to conduct this limited discovery in a manner consistent with the Federal Rules of Civil Procedure. At the conclusion of this limited discovery period, Defendants may renew their motion to dismiss Palma's First Amendment claim on the basis of qualified immunity. Defendants shall file this renewed motion pursuant to Rule 7.1(b) of the Local Civil Rules of this Court. *See* L. Civ. R. 7.1(b). The Court shall consider Defendants' renewed motion as one for partial summary judgment[12] pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### b. *Qualified Immunity and Probable Cause*

■■■ "[I]n § 1983 cases involving alleged violations of the Fourth Amendment, ... the inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." *Sharrar*, 128 F.3d at 827 (citing *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)). Police officers "who reasonably but mistakenly conclude that their conduct comports with the requirements of the Fourth Amendment are entitled to immunity." *Sharrar*, 128 F.3d at 826 (quoting *Hunter*, 502 U.S. at 227, 112 S.Ct. 534) (additional citations omitted); *see also Luthe*, 49 F.Supp.2d at 389. In cases involving claims for unlawful arrest, false imprisonment and malicious prosecution, the qualified immunity analysis turns on whether the police officers reasonably but mistakenly concluded that probable cause existed to arrest, detain and initiate the criminal prosecution. *See Luthe*, 49 F.Supp.2d at 395 (citing *Orsatti*, 71 F.3d at 483); *accord Wilson*, —— U.S. ——, 119 S.Ct. 1692, 143 L.Ed.2d 818; *Hunter*, 502

U.S. at 227, 112 S.Ct. 534; *Sharrar*, 128 F.3d at 828.

In *Sharrar*, the Third Circuit stated that a determination of whether probable cause existed at the time of the arrest is a factual question usually left to the jury. *Sharrar*, 128 F.3d at 818. In the context of a qualified immunity analysis, a question of law for the Court to decide, the Court must determine whether the facts known to the officers at the time of the alleged Fourth Amendment violation could support an objectively reasonable belief that probable cause existed. *Sharrar*, 128 F.3d at 828 (construing *Rogers v. Powell*, 120 F.3d 446, 455–57 (3d Cir.1997)).

■■■ Palma's allegations of fact contained in the Amended Complaint are the only facts before the Court from which I must determine the objective reasonableness of the defendant Sheriff Officers' belief that probable cause existed to arrest, detain and prosecute Palma. As I did above, regarding Palma's claim for retaliatory prosecution, I must deny Defendants' motion to dismiss on the basis of qualified immunity because the facts as alleged in the Amended Complaint support a finding that no reasonable police officer could have believed that probable cause existed to arrest, detain and prosecute Palma for the felony offenses of making terroristic threats and creating a false public alarm. *See* Amended Compl., ¶¶ 15–27.

■■■ Because, however, the reasonableness of the defendant Sheriff Officers' belief in the existence of probable cause turns on the facts known to these defendants at the time of the alleged Fourth Amendment violation, I shall deny the motion without prejudice, and permit the parties to take limited discovery on the issue of whether the factual circumstances at the time of the alleged Fourth Amendment violation would support a conclusion that

---

12. Because the municipal defendants are not entitled to the protections of the doctrine of qualified immunity, *see Leatherman*, 507 U.S. at 166, 113 S.Ct. 1160 (stating that municipal defendants "do not enjoy immunity from suit—either absolute or qualified—under § 1983"), Defendants will only be able to seek partial summary judgment, on behalf of the individual defendants, after the period of limited discovery.

probable cause existed, or that the defendant Sheriff Officers reasonably but mistakenly believed that probable cause existed. In conducting this limited discovery, the parties shall follow the motion schedule set forth above in Section III.B.4.a.

## C. *Palma's State Law Claims*

In the Amended Complaint, Palma sets forth numerous state common law causes of action. *See* Amended Compl., ¶¶ 35–39. In making their motion to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted, Defendants have raised no argument or defense addressed to Palma's state law claims. Thus, I am left to assume that Defendants do not seek dismissal of these claims at this time.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted shall be granted in part and denied in part. Palma's claim for cruel and unusual punishment shall be dismissed for failure to state a cognizable Eighth Amendment violation. I shall deny Defendants' motion to dismiss Palma's Fourth Amendment claims because Palma has sufficiently rebutted the presumption of probable cause attendant in the return of a criminal indictment. In addition, because I find that Palma has sufficiently pled the personal involvement and knowing acquiescence of Defendants, Coleman and McGettigan, as well as the existence of an unconstitutional policy of Atlantic County and the Sheriff's Department, I shall deny Defendants' motion to dismiss the Amended Complaint on the grounds of respondeat superior liability and failure to establish municipal liability. Insofar as Palma seeks to hold Defendant, Bentley, civilly liable for her allegedly perjured trial testimony, Palma's claims shall be dismissed for failure to state a claim. Palma's claims against Defendant, Bentley, arising in part out of her allegedly perjured grand jury testimony may proceed at this time because Bentley is not entitled to absolute immunity for actions taken in the capacity of a complaining witness. Finally, I shall deny without prejudice Defendants' motion to dismiss the Amended Complaint against the defendant Sheriff Officers on the basis of qualified immunity, and permit Defendants to renew their motion after a period of limited discovery on the issues of the defendant Sheriff Officers' true motive in arresting, detaining and prosecuting Palma, and whether these defendants could reasonably believe that probable cause existed for their actions. The Court will enter an appropriate order.

## ORDER

This matter having come before the Court on the motion of Defendants, Atlantic County, Atlantic County Sheriff's Department, James McGettigan, Jane Bentley, Roy C. Trotta, Jean Santora, and Raymond C. Coleman, to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Paul J. Gallagher, Esq., County Counsel, Diane M. Ruberton, Esq., Assistant County Counsel, appearing on behalf of Defendants, and Thomas J. Gossé, Esq., appearing on behalf of Plaintiff, Dennis A. Palma; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 15th day of June, 1999, hereby ORDERED that the motion of Defendants to dismiss the Amended Complaint is:

(1) GRANTED as to Plaintiff's Eighth Amendment claim for cruel and unusual punishment;

(2) DENIED without prejudice as to the qualified immunity defense of Defendants, McGettigan, Bentley, Trotta, Santora, and Coleman; and,

(3) in all other respects, DENIED; and,

IT IS further ORDERED that:

(1) Within 90 days from the entry of this Order, the parties shall conduct and complete discovery limited to the following issues:

(a) "whether the true motive for the conduct [of Defendants, McGettigan, Bentley, Trotta, Santora, and Coleman,] was retaliation rather than the legitimate reason proffered by the[se] defendants[,]" *Larsen v. Senate of the Commonwealth of Pennsylvania,* 154 F.3d 82, 94 (3d Cir.1998); and,

(b) "whether a reasonable officer could have believed [that probable cause existed for] ... his or her conduct ... in light of clearly established law and the information in the officer's possession[,]" *Sharrar v. Felsing,* 128 F.3d 810, 827 (3d Cir.1997);

(2) At the conclusion of this limited discovery period Defendants may file a motion for partial summary judgment on the ground that Defendants, McGettigan, Bentley, Trotta, Santora, and Coleman, are entitled to qualified immunity from liability on Plaintiff's claims for retaliatory prosecution, unlawful arrest, false imprisonment, and pre- and post-conviction malicious prosecution; and,

(3) Defendants' motion for partial summary judgment shall be filed with this Court in a manner consistent with the Federal Rules of Civil Procedure and Rule 7.1(b) of the Local Civil Rules of this Court; and,

(4) Pursuant to Rule 78 of the Federal Rules of Civil Procedure, unless otherwise directed by the Court, Defendants' motion for partial summary judgment will be decided on the papers without oral argument.